FILED

DEC 1 6 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

COLIN V. SHERIDAN,

                 Plaintiff,

      v.

MATT TRICKEY,

                 Defendant.

Civ. No.10-06034-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Pro se Plaintiff Colin V. Sheridan ("Sheridan") brings this action against Defendant Matt

Trickey ("Trickey"), a police officer for the City of Bend, under 42 U.S.C. § 1983. Sheridan alleges

Trickey used excessive force while arresting Sheridan, thereby violating his rights under the Fourth

Amendment.  In response, Trickey asserts the affirmative defenses of qualified immunity and

justified use of force, and requests recovery of attorney fees and costs under 42 U.S.C. § 1988.

Currently before the court is Trickey's motion for summary judgment on all claims.  The court

notified Sheridan of the requirements and potential consequences of a motion for summary judgment

on May 28, 2010.  *See Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).  Trickey served Sheridan

with a request for admissions pursuant to Federal Rule of Civil Procedure 36,[1] but Sheridan failed

to respond.  Also, Sheridan filed no opposition or any other documents in response to Trickey's

motion for summary judgment.  However, because Sheridan declared under penalty of perjury that

all contentions in his complaint are true and correct, his complaint is verified in accordance with 28

U.S.C. § 1746 and is treated as an affidavit for purposes of opposing this motion. *Keenan v. Hall*,

83 F.3d 1083, 1090 n.1 (9th Cir. 1996); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir.

2004).

Based on the evidence before the court, no genuine issue of material fact exists that Officer

Trickey is entitled to qualified immunity in this action.  Therefore, Trickey's motion for summary

judgment should be granted, and a judgment of dismissal should be entered.

### Summary of Facts

Sheridan alleges Officer Trickey used excessive force during an arrest on July 18, 2009.

Sheridan states that, following a "verbal altercation," Officer Trickey "lifted [him] up and slammed

[him] face first on the asphalt, knocking [him] out."  (Compl. 3.)  Sheridan alleges the officer's

---

[1]Although Rule 36 permits any admissions that have not been timely denied to be treated
as true, it is unclear whether such action can be used against a pro se plaintiff to concede his
entire claim.  Therefore, the court addresses the merits of the case to decide the summary
judgment motion.

actions were "excessive . . . police brutality" involving "malice." (*Id.* at 3.) Sheridan suffered three fractures to facial bones near his left eye, was hospitalized, and now suffers from migraines and blurred vision.

Sheridan provides no additional details concerning the exchange with Officer Trickey. Trickey submitted to the court a police report including a narrative he composed describing the events surrounding the incident, along with a declaration. Sheridan does not dispute any of Trickey's statements regarding the circumstances surrounding the encounter. Therefore, the following facts are not in dispute.

Around 10 p.m. on July 18, 2009, while in uniform and on patrol, Trickey responded to a dispatched report of a car burglary. Sheridan was walking near the location of the burglary, and Trickey believed Sheridan matched the description of the burglary suspect. As Trickey passed Sheridan in his patrol car, he observed that Sheridan was shirtless, yelling up the street, and holding up his middle fingers towards the patrol car. Trickey pulled into a Chevron gas station and parked about 25 feet from Sheridan. He could hear Sheridan yelling profanities at him while he parked. A woman was grabbing at and attempting to control Sheridan. Sheridan approached Trickey. Sheridan's behavior and body language were aggressive and confrontational, he appeared highly intoxicated, and he continued to yell profanities about the police. Out of concern for his safety, Trickey unholstered his taser and instructed Sheridan to stop. Sheridan stopped within 6 feet of the officer, continued to yell, and assumed a "fighting stance."

Trickey instructed the woman at Sheridan's side to move away in case he needed to use his taser, and she complied. Trickey then instructed Sheridan to turn around, at which time Sheridan began walking to a car that was running and parked at the Chevron. Trickey, concerned that

Sheridan would attempt to escape in the car or retrieve a weapon, continued to instruct Sheridan to stop. As Sheridan reached for the passenger door handle of the car, Trickey grabbed Sheridan's arm and pulled him away from the door, pinning Sheridan against the car. Trickey tried to gain control of Sheridan, instructing him that he was under arrest and to stop resisting. At one moment, Trickey was able to get Sheridan's arms behind his back, but his left arm broke free as Trickey attempted to retrieve his handcuffs. Sheridan then used his free arm to press back against Trickey using the car as leverage, and Trickey believed Sheridan was attempting to strike him.

At that point, Trickey initiated a takedown maneuver intended to bring Sheridan to the ground to better control and handcuff him. Trickey placed his hands on Sheridan's shoulders and pulled him such that he tripped over the officer's leg. As Sheridan fell, the officer lost his grip on Sheridan's shoulders because he was shirtless and sweaty. Trickey was unable to control Sheridan's fall, and Sheridan did not catch or brace himself. Sheridan's head collided first with the asphalt, and he was knocked unconscious.

Trickey immediately called for medics and did not handcuff, move or use any other force on Sheridan while awaiting the medics. Sheridan was transported to a hospital. Sheridan was later cited for Unlawful Entry into a Motor Vehicle, Theft II, Criminal Mischief II, Resisting Arrest, Disorderly Conduct and Minor in Possession of Alcohol by Consumption.

Officer Trickey denies excessive force was used during the arrest and asserts that he is entitled to summary judgment because he has qualified immunity against the claim.

*Legal Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). When a motion for summary judgment is unopposed, the court may only grant the motion if the movant's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981). Furthermore, in a civil suit involving a pro se inmate, the court must "construe liberally the filings and motions." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

FINDINGS AND RECOMMENDATION          5          {KPLR}

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, "[p]ro se litigants must follow the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986), and "should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## Discussion

Under 42 U.S.C. § 1983, a person acting "under the color of state law and authority" can be held liable for a constitutional violation. However, such a claim cannot stand against an individual with qualified immunity. The purpose of qualified immunity is to "shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 129 S. Ct. 808, 823 (2009). The court makes two inquires to determine whether an officer has qualified immunity for his actions. The first inquiry is whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right;" and the second is "whether the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although the sequence of these questions has been mandated, the Court recently held that, "while the sequence set forth [in *Saucier v. Katz*] is often appropriate, it should no longer be

regarded as mandatory." *Pearson*, 129 S. Ct. at 818. It is in the discretion of the district court to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* The defendant is entitled to qualified immunity if either a constitutional violation did not occur or the right allegedly violated was not clearly established at the time of the incident. *See Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, . . . step is to ask whether the right was clearly established.").

The court finds Officer Trickey is entitled to qualified immunity and his motion for summary judgment should be granted. First, viewing the evidence in the light most favorable to Sheridan, the court finds there to be no genuine issue of material fact that the force used by Officer Trickey during Sheridan's arrest was objectively reasonable and no constitutional violation occurred. Second, even if the force used was excessive, the right allegedly violated was not clearly established because a reasonable officer would have believed a takedown maneuver was lawful.

I. Constitutional Violation

When the alleged violation occurs in the course of an arrest, a plaintiff's excessive force claim is treated as an alleged violation of the Fourth Amendment. *Graham v. Connors*, 490 U.S. 386 (1989); *see also Smith v. City of Hemet*, 394 F.3d 689, 700-01 (9th Cir. 2005) ("It is clear that under *Graham*, excessive force claims arising before or during arrest are to be analyzed exclusively under the [F]ourth [A]mendment's reasonableness standard . . . ." (alteration in original) (quoting *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir.1989))). When deciding whether the force was "excessive," the

court asks whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Three relevant factors to consider include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396-97. In addition, the Ninth Circuit considers "the availability of other means of accomplishing the arrest." *Smith*, 394 F.3d at 703.

In weighing these factors, the Ninth Circuit instructs that the "most important single element" is whether the suspect poses an immediate threat. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). In addition, these factors "are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." *Id.* Therefore, "the severity and extent of the force used" is a fifth factor against which the others are weighed. *Smith*, 394 F.3d at 703. Ultimately, determining "reasonableness" requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tenn. v. Garner*, 471 U.S. 1, 8 (1985)). The circumstances must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The court must also remain cognizant that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

A. *Quantum of Force*

Officer Trickey contends the quantum of force of a takedown maneuver is low and therefore

cannot be unconstitutionally excessive. While a controlled takedown maneuver may be executed with "low" force, the court's focus is how the maneuver was executed. It is not merely the officer's choice to perform a takedown maneuver that is at issue here. Furthermore, "[f]orce is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). Even the tight fit of handcuffs may be unconstitutional when the circumstances make it unreasonable. *Id.* Likewise, a takedown maneuver can be executed in an unreasonable manner. For example, in *Santos v. Gates*, the Ninth Circuit held that a takedown maneuver could constitute excessive force. *Id.* The plaintiff in *Santos* suffered a broken back from the takedown, an injury the court noted was "serious" and "substantial." *Id.* at 853-54. Also, the circumstances surrounding the takedown suggested that the force used was unreasonable. First, the crime at issue was only public intoxication. *Id.* Second, Santos was described as "passive" at the time of the incident, presenting no "immediate threat," and not resisting arrest. *Id.*

Here, Sheridan asserts he was slammed face first into the asphalt with sufficient force to fracture his face and to knock him unconscious. Officer Trickey claims the takedown was not carried out as intended and that, as a result, the force exerted was greater than intended. The officer's subjective intent – whether or not he intended for Sheridan's head to be slammed into the asphalt as a result of the maneuver – is not relevant when determining whether a constitutional violation occurred. *See, e.g., Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."). Viewing the evidence in a light most favorable to Sheridan, the relevant quantum of force is the slamming of Sheridan's head against the asphalt with sufficient force to knock Sheridan unconscious and to

FINDINGS AND RECOMMENDATION                    9                              {KPLR}

fracture his face. Although not deadly force, the force is at least intermediate level force. *See Smith*, 394 F.3d at 706 (deadly force is force that "creates a substantial risk of causing death or serious bodily injury"); *see also Kanda v. Coeur d'Alene Police Chief Wayne Longo*, No. 2:09-CV-00404-EJL, 2010 WL 3000678, at *5 (D. Idaho July 27, 2010) (finding a similar facial injury incurred during a takedown when plaintiff's head collided with a railing to be caused by "intermediate force"); *cf. Bryan v. MacPherson*, 608 F.3d 614, 622 (9th Cir. 2010) (holding that taser in dart mode and similar devices "constitute an intermediate, significant level of force"); *Brooks v. City of Seattle*, 599 F.3d 1018, 1030 (9th Cir. 2010) (holding that taser in drive-stun mode is "less-than-intermediate" force). This factor therefore favors Sheridan, and the remaining factors must be weighed against it to determine whether the use of intermediate force was justified by the circumstances.

### B. Severity of the Crime

Officer Trickey initially pursued Sheridan because he believed him to be the suspect in a car burglary. The burglary offense for which Sheridan was ultimately charged is characterized by two Class A misdemeanors: Unlawful Entry into a Motor Vehicle and Theft II. OR. REV. STAT. 164.315(4), 166.025(2). This is not a minor infraction, as it is punishable by imprisonment of up to a year and a substantial fine. However, the potential punishment does not justify use of excessive force. When considering the severity of the crime, the court must consider whether or not the suspect could be reasonably considered "physically dangerous." *Garner*, 471 U.S. at 21. While burglary is a "serious crime," it is not a "violent" crime. *Id.*; *see also Chew*, 27 F.3d at 1443 n.9 ("burglaries only rarely involve physical violence"). Trickey had no objective reason based only on the type of crime to assume Sheridan was armed and "physically dangerous." Therefore, this factor

FINDINGS AND RECOMMENDATION                    10                    {KPLR}

weighs in favor of Sheridan.

    *C. Immediate Threat*

    The "most important" of the three *Graham* factors is whether the suspect poses an immediate threat to the safety of the officer or others. *Chew*, 27 F.3d at 1441. Trickey states that, even before exiting his vehicle, he observed Sheridan to be in an agitated state, yelling profanities, and holding up his middle fingers at him. As Sheridan approached him in the parking lot, Trickey understood Sheridan's body language to be aggressive and confrontational. Although Sheridan was not armed, he appeared and sounded as if he wanted to fight Trickey, assuming a fighting stance and yelling profanities about the police. Trickey was sufficiently concerned about the threat Sheridan posed to unholster his taser and to warn the woman at Sheridan's side of its possible use. When Sheridan moved towards a vehicle in the parking lot, the threat Sheridan posed escalated. Trickey believed that Sheridan was either attempting to escape or to retrieve a weapon. Trickey made a split-second decision to try to physically restrain Sheridan instead of using his taser or another weapon. Sheridan resisted and struggled with the officer. During this struggle, Trickey feared that Sheridan would strike him or cause him other injury. All of these facts remain undisputed by Sheridan.

    The law requires Sheridan to "set out specific facts showing a genuine issue for trial" in opposing a motion for summary judgment. FED. R. CIV. P. 56(e)(2). However, Sheridan has presented no specific facts concerning his actions prior to the arrest. Thus, there is no genuine issue of fact that Sheridan acted aggressively, refused to cooperate with Trickey, and attempted to enter the parked car. These circumstances are sufficient to create an immediate threat to the safety of the officer and to others in the Chevron parking lot. Accordingly, this factor weighs heavily in favor of Trickey.

FINDINGS AND RECOMMENDATION          11          {KPLR}

### D. Resisting Arrest

Sheridan also made significant efforts to resist arrest.  Sheridan was uncooperative with Trickey upon initial contact, such that Trickey felt it necessary to draw his taser to encourage compliance.  Despite the officer's threat to use his taser, Sheridan continued to defy the officer's orders by attempting to enter a vehicle in the Chevron parking lot.  When the officer attempted to arrest him, Sheridan continued to struggle.  Trickey informed Sheridan that he was under arrest and warned him to stop resisting.  During the scuffle, Sheridan used the vehicle to brace himself and to gain leverage to push the officer away.  His left arm was free and moving in a threatening way, as if to strike the officer.  Sheridan's defiant statements to Officer Trickey, his body language, and actual resistance indicated he had no intention of complying with the officer's requests without putting up a fight.

Sheridan does not dispute he resisted arrest, refused to cooperate with the officer, and attempted to strike the officer.  Additionally, Sheridan does not dispute the officer informed him he was under arrest and warned him to stop resisting.  Therefore, there is no genuine issue that Sheridan actively and physically resisted arrest, for which he was ultimately cited by the police.  This factor favors Trickey.

### E. Other Means of Accomplishing the Arrest

Finally, the court also considers whether Officer Trickey "could have used methods less painful or injurious" to arrest Sheridan.  *Brooks*, 599 F.3d at 1029.  It is important, however, not to over-emphasize the hypothetical availability of alternative methods based on an "after-the-fact analysis."  *Id.*  Police "are not required to use the least intrusive degree of force possible," rather the force used must only be reasonable.  *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.

1994). Based on the undisputed facts in the record, Trickey was the lone officer in the Chevron parking lot capable of bringing Sheridan under control. Therefore, he had no assistance, nor could he reasonably wait for back-up in view of Sheridan's attempts to possibly flee using the vehicle in the lot. Although Officer Trickey could have accomplished the arrest using a less forceful takedown maneuver, other means for subduing or controlling Sheridan would have required comparable or greater force and risk, such as use of tasers or guns, or by kicking or punching. Therefore, although a less violent alternative was available to Officer Trickey, given the immediacy of the situation, this factor does not weigh in favor of finding his actions unreasonable.

     *F. Totality of the Circumstances*

Weighing all these factors, the court finds Trickey's actions were objectively reasonable in view of the surrounding circumstances. Although the severity of the crime, car burglary, did not give Officer Trickey reason to presume Sheridan to be dangerous before arriving on the scene, Sheridan quickly made it clear to the officer through his statements and body language that he would not be cooperative and that he was planning to put up a fight. Sheridan actively resisted arrest and created the appearance of an immediate threat to Officer Trickey and others in the Chevron parking lot. While the amount of force used was not low, a reasonable officer on the scene would have considered such force objectively reasonable to defend himself from injury. Furthermore, given the rapidly evolving situation and potential escalation of the threat through use of the parked car, the force was reasonable to prevent injury to others.

Although the parties dispute the level of force used, Sheridan has failed to set out any specific facts that put at issue whether he resisted arrest and whether his actions created the appearance of an immediate threat. Therefore, there is no genuine issue as to any *material* fact since, even viewing

the evidence most favorable to Sheridan, Officer Trickey's actions were objectively reasonable. Consequently, Sheridan has failed to establish an essential element of his claim, that a constitutional violation occurred.

II. Clearly Established Right

Even if a constitutional violation had been established, Trickey is entitled to qualified immunity because a reasonable officer would believe his conduct to be lawful; therefore, the right violated was not clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

For a right to be "clearly established," it is not necessary that "the very action in question [be] previously . . . held unlawful;" however, "it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The question is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Therefore, part of the court's analysis involves review of relevant precedent to determine the pre-existing law. *Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010).

Even if the right is clearly established, qualified immunity protects an officer from reasonable mistakes as to the legality of his actions. *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003). That is, the officer is still entitled to qualified immunity if "the officer could have believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established

constitutional right.'" *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)). This allowance for reasonable error "encompasses both mistakes of fact and mistakes of law." *Rudebusch v. Hughes*, 313 F.3d 506, 514 (9th Cir. 2002). Therefore, the court also considers whether the officer's "use of force was 'premised on a reasonable belief that such force was lawful.'" *Bryan*, 608 F.3d at 628 (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001)).

In view of Ninth Circuit precedent, a controlled takedown maneuver (*i.e.*, a takedown executed so as to produce only minimal injury) is clearly lawful where an arrestee resists arrest or presents an immediate threat. For example, in *Gregory v. County of Maui*, two officers pinned the arrestee, Gregory, to the ground when he refused to drop a pen he was waiving threateningly at the police. 523 F.3d 1103, 1106-07 (9th Cir. 2008). Officers were pursuing Gregory for trespass and assault, and he refused to cooperate with the officers and resisted arrest. *Id.* Gregory was not physically injured during the takedown, although he died from a heart attack triggered by the event. *Id.* The court found the force exerted by the officers to be objectively reasonable.

Similarly, in *Blackmore v. City of Phoenix*, an officer's use of a takedown to effectuate arrest was deemed reasonable force where the plaintiff refused to obey officers' commands to leave the premises and to remove his hand from his pocket. 126 Fed. App'x 778, 781 (9th Cir. 2005). The court reasoned that the officer "did not have to wait to see what was in [plaintiff's] hand before taking [plaintiff] to the ground to protect everyone." *Id.; see also Kassim Abdulkhalik v. City of San Diego*, No. 08CV1515-MMA (NLS), 2009 WL 4282004, at *7 (S.D. Cal. Nov. 25, 2009) (takedown maneuver accomplished through a headlock in and off itself not excessive force as a matter of law); *Annan-Yartey v. Honolulu Police Dept.*, No. CV 06-00166 DAE-BMK, 2007 WL 2238858, at *4-5

(D. Haw. July 31, 2007) (granting summary judgment in favor of the officer who effectuated a takedown – no serious injuries resulted from the maneuver).[2]

Consequently, a reasonable officer, in a situation where an arrestee is resisting arrest and/or creating an immediate threat, would believe that the decision to execute a controlled takedown maneuver is lawful. Freedom from such a takedown is not a clearly established right, and Trickey's choice to execute a takedown maneuver was lawful. Furthermore, Trickey made an honest mistake of fact when he concluded that a takedown could be executed under the circumstances in a manner that minimized harm to Sheridan; there is no evidence that suggests Trickey acted to deliberately harm Sheridan or that he executed the takedown knowing that Sheridan likely would be hurt. Officer Trickey states – and Sheridan does not dispute – that Sheridan was shirtless and sweaty at the time of the incident and that, as a direct result, Sheridan slipped out of the officer's hands as he executed the maneuver. Trickey did not intend for Sheridan to slam into the asphalt head first. On the contrary, he intended to bring Sheridan to the ground in a controlled manner by placing his hands on Sheridan's shoulders. "[T]he Court has recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Maryland v. Garrison*, 480 U.S. 79, 87 (1987).

Trickey's error in judgment, made as a split-second response to an escalating situation, does not deprive Trickey of qualified immunity because it was based on a reasonable belief that his

---

[2]Other circuits appear to agree that a takedown maneuver is readily justified by the circumstances surrounding an arrest when it results in minor injuries. *See, e.g., Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (forcing the arrestee to the ground during arrest was held to be "de minimis force," which, without more, could not support a claim for excessive force); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) (finding force objectively reasonable although takedown caused cuts and bruises because arrestee posed an immediate threat to safety of officers and others – he was uncooperative and potentially armed).

actions were legal. Any unconstitutionality of his actions was not apparent to him because he did not intend to use the amount of force that resulted. The court finds that Trickey made an honest and reasonable mistake that led to the accidental and unintentional escalation of force. "[Q]ualified immunity . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Officer Trickey's decision to perform a takedown was neither plainly incompetent nor a knowing violation of the law. Therefore, Officer Trickey is entitled to qualified immunity for executing a takedown maneuver with a level of force higher than intended.

### Recommendation

Officer Trickey's motion for summary judgment (#21) should be GRANTED.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 29, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of December, 2010.

JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS AND RECOMMENDATION                    17                    {KPLR}